IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARC WACHTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| VIPIN SHAH, TISH BRASHEAR-FINNEY, PERCY MYERS, and DANIEL MONTI, Warden of Centralia Correctional Center, in his Official Capacity only, | ) Case No. 3:21-cv-1536-DWD |
| | ) |
| Defendants. | ) |

**MEMORANDUM & ORDER**

**DUGAN, District Judge:**

Before the Court are the parties' Motions for Summary Judgment, which are fully briefed with their respective Responses. (Docs. 114, 115, 116, 121, 128, 130, 133). For the reasons stated below, Plaintiff's Motion for Summary Judgment (Doc. 114) is **DENIED** and Defendants' Motions for Summary Judgment (Docs. 115, 116, 121) are **GRANTED**.

**I. BACKGROUND**

Plaintiff, an inmate at Centralia Correctional Center, filed this action under 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 1). He claims, under the Eighth Amendment to the U.S. Constitution, Defendants were deliberately indifferent to his concerns of rectal bleeding and vomiting of blood. (Doc. 1, generally). More specifically, as to Defendant Shah, who is a physician, Plaintiff alleges a deliberate indifference claim related to medical treatment provided in April and May 2021. (Docs. 1, generally; 63; 88, pgs. 2, 4; 116, pg. 2; 133, pg. 1). Defendant Shah allegedly ordered a

blood draw, which occurred six days later, but failed to perform a rectal or throat examination or to heed concerns about Plaintiff's Mobic prescription. (Docs. 1, generally; 88, pgs. 2, 4). As to Defendants Myers and Brashear-Finney, who are a physician and a nurse, respectively, Plaintiff alleges a deliberate indifference claim related to follow-up medical treatment provided in July 2021. (Docs. 63; 88, pgs. 2-3, 5-6; 116, pg. 2; 133, pg. 1); *Wachter v. Myers, Brashear-Finney, and Monti*, No. 22-cv-577-SMY, Docs. 1, generally; 71, pg. 3 (S.D. Ill.).[1] Defendant Brashear-Finney allegedly made comments to Defendant Myers about the appropriateness of Plaintiff's care, and Defendant Myers allegedly failed to hear Plaintiff's concerns about continued bleeding, offer treatment for that continued bleeding, or hear Plaintiff's concerns about the side-effects of his Mobic prescription. (Docs. 63; 88, pgs. 3, 5-6); *Wachter*, No. 22-cv-577-SMY, Docs. 1, generally; 71, pg. 3.

## II. ANALYSIS

Plaintiff and Defendants move for summary judgment. The Court will grant that relief if there is no genuine dispute as to any material fact, such that the movant is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a); *accord Driveline Sys., LLC v. Arctic Cat, Inc.*, 936 F.3d 576, 579 (7th Cir. 2019) (quoting *Dunderdale v. United Airlines, Inc.*, 807 F.3d 849, 853 (7th Cir. 2015); citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Assertions that a fact cannot be or is genuinely disputed must be supported by citations to the record. Fed. R. Civ. P. 56(c)(1)(A). Alternatively, the assertions must be supported

---

[1]Case No. 22-cv-577-SMY was consolidated with the instant case, Case No. 21-cv-1536-DWD, on October 31, 2022. (Doc. 54); *Wachter*, No. 22-cv-577-SMY, Doc. 71.

2

by a showing that the materials cited do not establish the absence or presence of a genuine dispute or that an adverse party cannot support the fact. Fed. R. Civ. P. 56(c)(1)(B).

If the movant presents evidence to show the absence of a genuine dispute of material fact, then the burden shifts to the nonmovant to provide evidence of specific facts that create a genuine dispute of material fact. *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012) (citing *Hudson Ins. Co. v. City of Chicago Heights*, 48 F.3d 234, 237 (7th Cir. 1995)). A genuine dispute of material fact exists if there is sufficient evidence for the nonmovant to receive a verdict. *Driveline Sys.*, 936 F.3d at 579 (quoting *Aregood v. Givaudan Flavors Corp.*, 904 F.3d 475, 482 (7th Cir. 2018), *reh'g denied* (Oct. 30, 2018)). Speculation that is unsupported by the evidence cannot defeat summary judgment. *Moje v. Fed. Hockey League, LLC*, 377 F. Supp. 3d 907, 920 (N.D. Ill. 2019) (citing *Sbika v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 721 (7th Cir. 2018); *Cleveland v. Porca Co.*, 38 F.3d 289, 295 (7th Cir. 1994)).

When considering a motion for summary judgment, the Court will not determine credibility, weigh the evidence, or decide which inferences to draw from the facts, as those tasks are reserved for the finder of fact. *Runkel v. City of Springfield*, 51 F.4th 736, 741 (7th Cir. 2022) (quoting *Johnson v. Advoc. Health & Hosp. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018)). Instead, based on the evidence of record, the Court will decide whether a genuine dispute of material fact requires a trial. *Id.* (quoting *Johnson*, 892 F.3d at 893). When doing so, the Court construes the evidence in a light most favorable to the nonmovant while also avoiding the temptation of deciding one side's version of the facts is more likely true than the other side's version of the facts. *Id.* (quoting *Johnson*, 892 F.3d at 893).

If the parties file cross-motions for summary judgment, the Court applies the ordinary summary judgment standards, articulated above, during its review. *See Tokio Marine Specialty Ins. Co. v. Altom Transp., Inc.*, 618 F. Supp. 3d 791, 795 (N.D. Ill. 2022) (quoting *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017)). The Court simultaneously reviews the cross-motions for summary judgment, but neither may be granted unless the evidence, as a whole, reveals there is no genuine dispute of material fact. *Id.* (quoting *Bloodworth*, 475 F.App'x at 95). That is, each party must still bear their burden of proof. *Wilson v. Baptiste*, No. 13-cv-7845, 2016 3878125, *2 (N.D. Ill. July 18, 2016) (quoting *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 504 n. 4 (7th Cir. 2008)). Finally, courts cannot assume cross-motions for summary judgment are suggestive of no undisputed material facts, and the denial of one cross-motion for summary judgment does not require the grant of the other cross-motion for summary judgment. *Wilson*, 2016 3878125 at *2 (quoting *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997)).

As a substantive matter, it is well settled that prison medical professionals violate the Eighth Amendment's prohibition on cruel and unusual punishment when their conduct shows a deliberate indifference toward serious medical needs. *Jones v. Mathews*, 2 F.4th 607, 612 (7th Cir. 2021) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997)); *Lewis v. McLean*, 864 F.3d 556, 562 (7th Cir. 2017) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The plaintiff must prove (1) an objectively serious medical condition, and (2) deliberate indifference toward the inmate's health or safety. *Jones*, 2 F.4th at 612 (citing *Orlowski v. Milwaukee Cnty.*, 872 F.3d 417, 423 (7th Cir. 2017)); *accord Eagan v. Dempsey*, 987 F.3d 667, 693-95 (7th Cir. 2021); *Campbell v. Kallas*, 936 F.3d 536, 544-45 (7th

Cir. 2019); *Lisle v. Welborn*, 933 F.3d 705, 716 (7th Cir. 2019). When reviewing this claim, the Court considers the totality of the inmate's medical care. *Lisle*, 933 F.3d at 716.

Notably, there is an objective and a subjective component to the above claim. *Jones*, 2 F.4th at 612 (quoting *Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 764 (7th Cir. 2002)); *accord Lewis*, 864 F.3d at 562. To satisfy the objective component to the claim, a plaintiff may provide evidence that a physician diagnosed a medical condition as requiring treatment, a layperson would find the need for treatment to be obvious, or the failure to treat the condition resulted in a more serious injury or the unnecessary and wanton infliction of pain. *Jones*, 2 F.4th at 612 (quoting *Lockett v. Bonson*, 937 F.3d 1016, 1022-23 (7th Cir. 2019)); *Eagan*, 987 F.3d at 695 (quoting *Gutierrez*, 111 F.3d at 1373); *Orlowski*, 872 F.3d at 423 (quoting *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010)). A condition may be obvious to a layperson even if he or she cannot diagnose or properly identify the cause of the observed ailment. *Jones*, 2 F.4th at 612 (quoting *Orlowski*, 872 F.3d at 423). Also, a medical condition need not be life-threatening to be serious. *Orlowski*, 872 F.3d at 423.

To satisfy the subjective component to the claim, a plaintiff must prove the prison medical professionals were aware of facts from which to infer a substantial risk of serious harm, drew such an inference, and responded with a reckless or intentional disregard for the serious medical condition through inaction or woefully inadequate action. *Jones*, 2 F.4th at 612; *Eagan*, 987 F.3d at 695; *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). That is, a plaintiff must prove "a sufficiently culpable state of mind," *i.e.*, that the prison medical professionals were "aware of a substantial risk of serious harm[] and effectively

5

condone[d] th[at] harm by allowing it to happen." *Jones*, 2 F.4th at 612-13 (quoting *Estate of Simpson v. Gorbett*, 863 F.3d 740, 747 (7th Cir. 2017) (cleaned up); *Eagan*, 987 F.3d at 693).

The Court stresses that deliberate indifference requires a state of mind more blameworthy than even gross negligence. *Jones*, 2 F.4th at 612-13 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *McGowan*, 612 F.3d at 640; *see also Eagan*, 987 F.3d at 688 ("A physician's 'negligen[ce] in diagnosing or treating a medical condition does not state a valid claim…under the Eighth Amendment.' "). Indeed, the Seventh Circuit has found "an inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind." *Eagan*, 987 F.3d at 688 (quoting *Estelle*, 429 U.S. at 105-06) (cleaned up). Likewise, a mistake in professional judgment is not deliberate indifference. *Id.* (citing *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)). As such, treatment decisions are entitled to deference unless no minimally competent professional would respond in the same way. *Campbell*, 936 F.3d at 545 (quoting *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008)); *accord Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011); *see also Orlowski*, 872 F.3d at 424 ("Even if a defendant recognizes the substantial risk, he is free from liability if he "responded reasonably to the risk, even if the harm ultimately was not averted.") (cleaned up). The treatment must be "such a substantial departure from accepted professional judgment, practice, or standards[] as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Campbell*, 936 F.3d at 545 (quoting *Sain*, 512 F.3d at 895) (cleaned up); *see also Roe*, 631 F.3d at 857 ("The

burden is high on a plaintiff making such a claim: Deliberate indifference is not medical malpractice; the Eighth Amendment does not codify common law torts.' ") (cleaned up).

Relevantly, a "[r]efusal to treat chronic pain, delay in providing medical treatment, refusal to provide prescribed pain medication, or erroneous treatment based on a substantial departure from accepted medical judgment may evidence deliberate indifference." *Spencer v. Sheahan*, 158 F. Supp. 2d 837, 848 (N.D. Ill. 2001) (citing *Jones v. Simek,* 193 F.3d 485, 490 (7th Cir. 1999); *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996); *Ralston v. McGovern,* 167 F.3d 1160, 1162 (7th Cir. 1999); *Sherrod v. Lingle,* 223 F.3d 605, 611 (7th Cir. 2000)); *but see Campbell*, 936 F.3d at 549 ("Deciding whether to provide additional medical interventions—especially when the inmate's preferred course of treatment poses considerable challenges to prison administration—is not the same as deciding to provide no treatment at all."). Whether delay is tolerable depends upon the seriousness of the condition, the prison official's awareness, and the ease of treatment. *Jones*, 2 F.4th at 615 (quoting *Perez v. Fenoglio*, 792 F.3d 768, 778 (7th Cir. 2015)); *see also Lewis*, 864 F.3d at 563 ("A delay in treatment may show deliberate indifference if it exacerbated the inmate's injury or unnecessarily prolonged his pain, and even brief, unexplained delays in treatment may constitute deliberate indifference.") (cleaned up).

### A. Plaintiff's Motion for Summary Judgment (Doc. 114)

Plaintiff's Motion for Summary Judgment contains no legal argument; instead, it is limited to a statement of material facts. (Doc. 114, generally). Further, the statement of material facts violates Federal Rule of Civil Procedure 56 and Local Rule 56.1. *See* L.R. 56.1(j) (eff. Oct. 30, 2023) ("This Local Rule applies equally to represented and *pro se*

7

parties."). Plaintiff failed to "cit[e] to particular parts of materials in the record" and to provide "specific citation(s) to the record, including page number(s)." *See* Fed. R. Civ. P. 56(c)(1); L.R. 56.1(a) (eff. Oct. 30, 2023); *see also* Fed. R. Civ. P. 56(c)(3) ("The Court need consider only the cited materials, but it may consider other materials in the record."); L.R. 56.1(f) (eff. Oct. 30, 2023) ("The Court will disregard any asserted fact that is not supported with a citation to the record, unless the factual basis for the assertion is clearly identifiable from the parties' related citations or permissible inference."). He also failed to "set[] forth each relevant, material fact in a separately numbered paragraph." L.R. 56.1(a) (eff. Oct. 30, 2023). Defendants Shah, Myers, and Brashear-Finney note these deficiencies but still answer the statement of material facts. (Doc. 130, pgs. 1-10). Regardless, the Court is left to speculate about how the material facts, even if proper and procedurally sufficient under Rule 56 and Local Rule 56.1, fit within a deliberate indifference claim against Defendants under the Eighth Amendment. Thus, whether due to procedural violations of Rule 56 and Local Rule 56.1(a), or to the substantive failure to carry his burden with argument on summary judgment, Plaintiff's Motion for Summary Judgment must be **DENIED**. *See* Fed. R. Civ. P. 56(a), (c)(1); L.R. 56.1 (eff. Oct. 30, 2023).

### B. Defendants' Motions for Summary Judgment (Docs. 115, 116, 121)[2]

Defendants Shah, Myers, and Brashear-Finney argue neither their action nor inaction caused an injury to Plaintiff. (Doc. 116, pg. 1). More specifically, Defendants state: "[T]he facts developed during discovery demonstrate that Plaintiff received

---

[2]The Court notes, in response to the filing of Defendants' Motions for Summary Judgment, Defendants Shah, Myers, and Brashear-Finney, as well as the Court itself, provided Plaintiff the requisite notice under Federal Rule of Civil Procedure 56 and Local Rule 56.1. (Docs. 117 & 123).

appropriate treatment for rectal bleeding and self-reported side effects of Mobic, and [he] did not suffer any harm because of the Defendants' actions." (Doc. 116, pgs. 11-12).

As to Defendant Shah, in particular, Defendants argue "[t]he record does not indicate that [his] treatment decisions deviated so significantly from accepted medical practices that his medical judgment could be said to be compromised." (Doc. 116, pg. 12). They also state: "Courts within the Seventh Circuit have determined on several occasions that prison doctors are not deliberately indifferent for choosing to treat complaints of rectal bleeding conservatively during initial evaluations, and that the decision of whether or when to use diagnostic tests such as colonoscopies appropriately falls within the proper exercise of a physician's independent medical judgment." (Doc. 116, pg. 12). Finally, Defendants describe Defendant Shah's encounters with Plaintiff as follows:

> In this case, Plaintiff complained of rectal bleeding as the primary side effect he experienced while on Mobic following Dr. Shah's treatment of pain in his lower back, elbow, shoulder, and neck in March 2021. As a threshold matter, it must be noted that Dr. Shah was not the regular doctor assigned to CCC and served intermittently there as a substitute doctor, continued Plaintiff's treatment from a prior encounter with another physician, Dr. Pelegrin, and did not control scheduling of doctor appointments at CCC. Thus, Dr. Shah had limited involvement and lasting control over Plaintiff's medical care. Dr. Shah's care of Plaintiff followed in the wake of Plaintiff undergoing an MRI of the lumbar back on March 2, 2021, for which Dr. Pelegrin had previously placed a referral on February 1, 2021. Dr. Shah discussed the MRI report with Plaintiff approximately two weeks later on March 13, 2021, advised Plaintiff the MRI showed advanced degenerative disc disease (DDD) with mild narrowing, and continued his existing treatment plan that included Robaxin and Ibuprofen for back pain. He discussed the MRI results with Plaintiff again five days later on March 18, 2021, observed that Plaintiff's pain did not significantly affect his activities of daily living, and added a low-bunk permit and planned a referral to physical therapy.

> Dr. Shah ordered Mobic for Plaintiff on April 26, 2021. Plaintiff self-reported to Dr. Shah about a month later on May 25, 2021 that he could not take Mobic because it caused him indigestion, and Dr. Shah responded by discontinuing Mobic that very day. He began complaining of rectal bleeding later in the day on May 25, claiming symptoms started approximately 3-5 days prior. In response, Dr. Shah saw him **the very next day** on May 26 and ordered CBC labs, a hemorrhoid suppository, request for prior medical records, and follow up in doctor sick call in one month. Following this appointment, Dr. Shah had no further notable encounters with Plaintiff concerning Mobic or its side effects and other doctors took over Plaintiff's care for those conditions.

(Docs. 116, pgs. 13-14; 122) (Emphasis in original) (internal citations omitted).

Since Defendant Shah addressed Plaintiff's concerns by "immediately discontinuing Mobic" on May 26, 2021, Defendants argue "[i]t is unclear what Plaintiff alleges Dr. Shah should have done in March 2021 or on May 26, 2021, but the law is clear that Dr. Shah's treatment decisions fell well within the proper scope of his independent medical judgment because the decision to use diagnostic testing are subject to that judgment." (Doc. 116, pg. 14). In any event, they state there is no evidence that any delay actually harmed Plaintiff, as "a subsequent colonoscopy on February 17, 2022[,] revealed only mild irritation of the stomach with no evidence of lesions or ulcers that would have caused any gastrointestinal bleeding." (Doc. 116, pg. 14). A medical expert also found no evidence of negligence or deliberate indifference by Defendant Shah. (Doc. 116, pg. 15).

Next, as to Defendants Myers and Brashear-Finney, Defendants argue Plaintiff was "off Mobic for approximately two months by the time he saw Dr. Myers and Nurse Brashear-Finney on July 27, and…any side effects from its use would have dissipated within two weeks." (Doc. 116, pg. 15). Nevertheless, during the July 27, 2021, medical appointment, Defendants note Defendant Myers "responded to Plaintiff's complaints of

10

rectal bleeding by advising him [that] his recent blood tests were normal and indicated no significant bleeding." (Doc. 116, pg. 15). Plaintiff was allegedly "encouraged…to use medications for hemorrhoids to prevent suspected bleeding from hemorrhoids." (Doc. 116, pg. 15). Defendants also note Plaintiff did not report rectal bleeding again until October 15, 2021, Defendant Myers responded to that report on November 30, 2021, with orders for medication and a colonoscopy, and the colonoscopy and esophagogastroduodenoscopy that occurred on February 17, 2022, "revealed no significant medical condition in the stomach or throat that would have caused Plaintiff's rectal bleeding." (Doc. 116, pg. 15). There was purportedly no need for a follow-up with the gastroenterologist. (Doc. 116, pgs. 15-16). As such, Defendants argue Plaintiff "suffered no worsened prognosis or unnecessary pain as a result of [any] perceived delay in treatment." (Doc. 116, pg. 16). Defendants maintain Plaintiff may have disagreed with Defendant Myers' treatment plan, but it is undisputed that he acted in a medically appropriate fashion without ignoring Plaintiff's concerns. (Doc. 116, pgs. 15-16).

As to Defendant Brashear-Finney, Defendants note she "had the least involvement in Plaintiff's care." (Doc. 116, pg. 16). In fact, Defendants note "Plaintiff admits the sole basis for his allegations against her was that he observed her speak with Dr. Myers immediately before the July 27 appointment." (Doc. 116, pg. 16). However, it is undisputed that Plaintiff "did not hear what they discussed." (Doc. 116, pg. 16). Therefore, in the absence of such evidence, or of evidence that she was otherwise involved in the constitutional deprivation alleged by Plaintiff, Defendants argue Defendant Brashear-Finney is entitled to a judgment as a matter of law. (Doc. 116, pg. 6).

11

Defendant Monti, for his part, notes that he remains a party to the case for purposes of carrying out any injunctive relief. (Doc. 121, pg. 1). However, since there is no continuing violation of federal law that warrants injunctive relief, and he is otherwise entitled to sovereign immunity, Defendant Monti requests that the Court grant summary judgment in his favor. (Doc. 121, pgs. 2-7). In doing so, Defendant Monti stresses that there is no "ongoing emergent health issue" because the medication that allegedly caused Plaintiff to suffer adverse side effects, Mobic, has been discontinued. (Doc. 121, pg. 6).

In his Response in Opposition to the Motion for Summary Judgment of Defendants Shah, Myers, and Brashear-Finney, Plaintiff answers the statement of material facts. (Doc. 133, pgs. 1-5). Plaintiff also includes argument in those answers. (Doc. 133, pgs. 1-5). However, the Response in Opposition to that Motion for Summary Judgment does not cite any legal authority. (Doc. 133, generally). Despite this circumstance, and the circumstances surrounding the deficiencies in his own Motion for Summary Judgment, Plaintiff states he "is allowing his statements previous to stand as the argument section of this objection so as not to be repetitive but this was not intentional." (Doc. 133, pg. 5).

Here, Plaintiff indicates "the entire context of the issues starts on 4-26-21." (Doc. 128, pg. 1). On that date, Plaintiff had a medical appointment with Defendant Shah, at which time an x-ray of Plaintiff's right shoulder and elbow was ordered. (Docs. 116-1, pg. 12; 122, pg. 2). Defendant Shah also discontinued Plaintiff's Motrin prescription in favor of a 12-month prescription for the drug at issue, Mobic. (Docs. 116-1, pg. 12; 122, pg. 2).

On May 25, 2021, Defendant Shah discussed the x-ray results with Plaintiff. (Docs. 116-1, pgs. 13-15; 122, pg. 2). Defendant Shah also discontinued the prescription for Mobic because Plaintiff reported experiencing indigestion. (Docs. 116-1, pgs. 13-18; 122, pg. 2).

In a visit with a nurse later that same day, Plaintiff reported regular bowel habits. (Doc. 116-1, pg. 16). However, he noted a history of hemorrhoids or constipation, bleeding/blood in his stool over the past 3 to 5 days, and rectal pain. (Docs. 116-1, pg. 16; 122, pg. 2). The nurse noted: "reports has [*sic*] lessened since stopping mobic." (Doc. 116-1, pg. 16). He was referred to a doctor. (Docs. 116-1, pg. 16; 122, pg. 2).

Plaintiff was again seen by Defendant Shah, at the latest, on May 28, 2021, for "eval of blood in stool w/ mobic." (Docs. 116-1, pg. 16; 122, pg. 2). Plaintiff reported a prior colonoscopy that revealed two polyps. (Docs. 116-1, pg. 17; 122, pg. 2). The polyps caused pain, leakage, increased bathroom use, and bleeding. (Docs. 116-1, pg. 17; 122, pg. 2). Plaintiff also reported that his neurological medication and Mobic caused him to "gain 30 lbs." (Docs. 116-1, pg. 17; 122, pg. 2). Defendant Shah rushed a request for Plaintiff's prior medical records and ordered a CBC panel, hemorrhoid suppository, and follow-up medical appointment in one month. (Docs. 116-1, pg. 17; 122, pg. 2). This was Defendant Shah's last notable encounter with Plaintiff. (Docs. 116-1, pgs. 18-25; 122, pg. 2).

Thereafter, Plaintiff's follow-up medical appointment had to be rescheduled due to a quarantine, lockdowns, and limited movement orders. (Doc. 116-1, pgs. 20-21). Eventually, the follow-up medical appointment occurred with Defendant Myers on July 27, 2021. (Doc. 116-1, pg. 22). On that date, which was over 2 months after Defendant Shah discontinued Plaintiff's prescription for Mobic, Defendant Myers noted Plaintiff did

13

not continue to have "the large volume of blood" in his stool. (Doc. 116-1, pg. 22). Plaintiff reported that, on occasion, he would still see blood in his stool. (Doc. 116-1, pg. 22). Plaintiff attributed his problems to the prior prescription for Mobic. (Doc. 116-1, pg. 22). However, Defendant Myers reviewed Plaintiff's CBC panel, which was previously ordered by Defendant Shah, and informed him that the results were normal. (Doc. 116-1, pg. 22). Plaintiff was advised to use his medications for hemorrhoids. (Doc. 116-1, pg. 22).

On October 15, 2021, Plaintiff was referred to a doctor after reporting to a nurse, *inter alia*, that he had "fecal matter" drainage and pain during bowel movements. (Doc. 116-1, pg. 24). Defendant Myers encountered Plaintiff on November 30, 2021, in response to those reports. (Doc. 116-1, pg. 25). Plaintiff's blood pressure was elevated, and he reported feeling stressed. (Doc. 116-1, pg. 25). Ultimately, Defendant Myers submitted a collegial review for a colonoscopy and ordered Plaintiff fiber tablets. (Doc. 116-1, pg. 25).

On January 5, 2022, Plaintiff had an off-site evaluation for his complaints of "rectal drainage." (Doc. 116-1, pg. 27). On February 17, 2022, Plaintiff underwent a colonoscopy and esophagogastroduodenoscopy that revealed the following findings:

> Findings: -minimal inflammation in the antrum, biopsies taken here. Biopsies also taken [of] the squamocolumnar junction. No strictures, no mass lesions, no ulcers. Vocal cords were briefly visualized.
>
> Normal colonoscopy to the terminal ileum. No diverticulosis noted. Mucosa normal. No polyps. No hemorrhoids. Sphincter tone normal. No fissures.

(Doc. 116-1, pgs. 30-31).

In terms of a recommendation or plan, Plaintiff merely needed to "repeat colorectal cancer screening in 10 years." (Doc. 116-1, pg. 31). Otherwise, there was "[n]o need to follow up in the office" of the nonparty medical doctor. (Doc. 116-1, pg. 31).

Finally, Dr. Kenneth Breger, a medical doctor, reviewed Plaintiff's Complaint, the Court's Memorandum & Order granting a consolidation of Plaintiff's two cases, Plaintiff's Answers to Defendants' Interrogatories, and Plaintiff's medical and mental health records from Centralia Correctional Center in order to offer an expert opinion for Defendants. (Doc. 116-4, generally). He is the only medical doctor to offer such an opinion in this case. He opined: "While Mobic can cause bleeding in the digestive tract, there was no evidence the medication did so in [Plaintiff]'s case. [Plaintiff] underwent several diagnostic tests, including an endoscopic procedure, and none of the evaluations indicated he was suffering from bleeding in his digestive tract." (Doc. 116-4, pgs. 1-2). Further, while Plaintiff allegedly suffered from a wide range of side effects after taking Mobic, most of those side effects "were conditions or effects not commonly reported or associated with taking Mobic." (Doc. 116-4, pg. 2). Dr. Breger indicated "[t]here was no support in [Plaintiff's] medical records that any of the[] additional symptoms, including, but not limited to coughing up blood, were related to taking Mobic." (Doc. 116-4, pg. 2). In any event, Dr. Breger believed, "[i]f [Plaintiff] did have an intolerance to Mobic, once the medication was stopped[,] within a week or two[,] any side effects should have been resolved." (Doc. 116-4, pg. 2). On the standard of care, Dr. Breger opined as follows:

> When a patient presents with a complaint of blood in the stool it is not customary practice or standard of care to perform a rectal examination. The standard of care regarding a report of blood in stool would be to check

> vitals and then preform [*sic*] an abdominal exam. The first diagnostic test would be a blood count. If the results came back normal one would proceed to treat the blood as hemorrhoidal. If the results showed the patient was anemic, upper and lower endoscopic evaluations would be appropriate. A CT scan would be appropriate if the patient had abdominal tenderness upon examination.
>
> A rectal examination would not be an effective method of determining the source of blood even if some blood was detected during the examination. The routine diagnostic tool is to run a blood panel, as was done here. A blood panel would test for a drop in red blood cells or anemia, indicating internal bleeding was present. Here, [Plaintiff]'s test results were normal, which indicated he had no signs of internal bleeding or any indication that Mobic had irritated his stomach or digestive tract.

(Doc. 116-4, pg. 2).

Now, it is undisputed Plaintiff suffered from an objectively serious medical condition. Nevertheless, nothing about the above-discussed medical care is indicative of Defendants' personal involvement in causing Plaintiff's alleged constitutional deprivation or deliberate indifference toward his health or safety, especially in light of Dr. Breger's opinions. *See Gonzalez v. McHenry County, Illinois*, 40 F.4th 824, 828 (7th Cir. 2022) (noting, for personal involvement, which is required against an individual, "the plaintiff must show that the relevant official 'caused the constitutional deprivation at issue' or 'acquiesced in some demonstrable way in the alleged constitutional violation.' "). Plaintiff obviously disagrees with the medical treatment that was provided by Defendants; however, as discussed below, neither that disagreement nor Plaintiff's perceived breaches of care by Defendants rise to the level of deliberate indifference.

As to Defendant Shah, it is clear he used reasonable medical judgment to address Plaintiff's ailments. (Docs. 116-1, pgs. 12-15; 122, pg. 2). The prescription for Mobic, which

16

was prescribed on April 26, 2021, was discontinued following complaints from Plaintiff at their next encounter on May 25, 2021. (Docs. 116-1, pg. 12-18; 122, pg. 2). Also, one to three days later, he saw Plaintiff for an "eval of blood in stool w/ mobic," resulting in a rushed request for Plaintiff's medical records and orders for a CBC panel, a hemorrhoid suppository, and a follow-up medical appointment. (Docs. 116-1, pgs. 16-17; 122, pg. 2).

Likewise, over two months after the discontinuance of Mobic by Defendant Shah, on July 27, 2021, Defendant Myers exercised reasonable medical judgment to address Plaintiff's ailments by reviewing his CBC panel, which were normal, and advising him of the need to use hemorrhoid medication. (Doc. 116-1, pg. 22). When Defendant Myers saw Plaintiff on November 30, 2021, after the October 15, 2021, referral by a nurse, he submitted a collegial review for a colonoscopy and ordered fiber tablets. *See Lloyd v. Moats*, 721 Fed. App'x 490, 494 (7th Cir. 2017) ("[A] delay in ordering tests must be evaluated in light of the entire record to determine if it evinces deliberate indifference: '[T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment."); (Doc. 116-1, pgs. 24-25). The esophagogastroduodenoscopy and colonoscopy occurred on February 17, 2022, after a consultation, and the results did not require a "follow up in the office" of the nonparty doctor. (Doc. 116-1, pgs. 30-31).

Finally, there is scant evidence in the record relating to Defendant Brashear-Finney. At his deposition, however, Plaintiff confirmed that his claim against Defendant

Brashear-Finney is based on a conversation that she had with Defendant Myers before Plaintiff's appointment on July 27, 2021. (Doc. 116-3, pgs. 41-46, 71-73). Plaintiff testified:

> As far as this particular suit goes, I haven't done any kind of useful amendments, but I may depending on what—how this goes. [Defendant Brashear-Finney] went into [Defendant] Myers' office and was looking straight at me when she went in the room. Okay. That may be unconscious, it may be a security issue where she wanted to make sure I wasn't going to continue walking. I did not. But when she came out, she was awfully apologetic, which is odd for her. And Myers had a stern grip on not treating me. And I can use any kind of logic you'd like. It all comes back to the fact that it's most likely that she said something. I don't know if I have enough to file an amendment for conspiracy, but I'm going give it a try and see what happens.

(Doc. 116-3, pg. 72).

Plaintiff admitted he could not hear the conversation between Defendants Myers and Brashear-Finney, so "[t]hey could have been talking about anything." (Doc. 116-3, pg. 73). And, as noted above, the Court already found nothing amiss about the treatment provided by Defendant Myers on July 27, 2021, after he spoke to Defendant Brashear-Finney. On this record, Plaintiff resorts to rank speculation, which does not suffice.

By virtue of these conclusions, the Court also finds there is no injunctive relief that can be granted by Defendant Monti. *See Kress v. CCA of Tennessee, LLC*, 694 F.3d 890, 894 (7th Cir. 2012) (noting, when there is no continuing violation of federal law, injunctive relief is not part of a federal court's remedial powers); *LSP Transmission Holdings II, LLC v. Huston*, 131 F.4th 566, 580 (7th Cir. 2025) ("[T]he difference between a preliminary injunction and a permanent injunction is meaningful: in granting or denying a preliminary injunction, the court decides only the plaintiffs' likelihood of success on the merits, whereas in granting or denying a permanent injunction, it decides their actual

18

success on the merits.") (cleaned up). For these reasons, each Defendant is entitled to a judgment as a matter of law on Plaintiff's claim of deliberate indifference. *See Davis v. Wahl*, No. 10-cv-971, 2013 WL 6097108, *4 (S.D. Ill. Nov. 20, 2013) (finding, in a case presenting circumstances similar to those in this case, the defendant was entitled to summary judgment on the plaintiff's claim of deliberate indifference to rectal bleeding and pain, where "not only was [the defendant] attentive to [the plaintiff]'s medical needs, but [the] defendant also gave [the plaintiff] effective treatment," including an examination "the very next day" after the plaintiff noticed rectal bleeding, prescriptions for suppositories, orders for blood and stool tests, and various medications and an antibiotic); *Mack v. Nwaobasi*, No. 12-cv-986, 2015 WL 264708, *5 (S.D. Ill. Jan. 20, 2015) (finding, in a case presenting circumstances similar to those in this case, the defendants were entitled to summary judgment on the plaintiff's claim of deliberate indifference to rectal bleeding, where "they regularly monitored [the] [p]laintiff, seeing him on various occasions from March to November 2011, provided him with different medications to treat the bleeding, performed several different tests to identify the source of his bleeding, and ultimately directed him to change his diet in order to alleviate the problem").

### III. CONCLUSION

As stated above, Plaintiff's Motion for Summary Judgment (Doc. 114) is **DENIED** and Defendants' Motions for Summary Judgment (Docs. 115, 116, 121) are **GRANTED**. The Clerk of the Court is **DIRECTED** to enter judgment accordingly and to close the case.

**SO ORDERED.**

Dated: September 19, 2025

DAVID W. DUGAN
United States District Judge